SMITH *v*. STATE OF INDIANA.

[No. 29,880.  Filed May 31, 1961.]

*James P. Seidensticker, Jr.,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, *Richard M. Givan,* Assistant Attorney General, and *Richard C. Johnson,* Deputy Attorney General, for appellee.

LANDIS, C. J.—This appeal is taken from appellant's judgment of conviction for assault with intent to feloniously shoot, kill, and murder one John Hamilton, for which appellant was sentenced to the Indiana State Prison for a period of one to ten years.

The only error here assigned is the overruling of appellant's motion for new trial based on the specification that the verdict of the jury is not sustained by sufficient evidence.

The evidence favorable to appellee necessary for our consideration of this question is as follows:

Shortly after midnight on August 13, 1958, appellant went to the residence of John Hamilton and knocked on the door with his 32 caliber revolver and asked to see his (appellant's) wife. Upon being informed by Hamilton that she was not there, appellant stated: ". . . 'Open up this God damned door or I will blow it in' . . ." Earlier in the evening (at about 11 p.m. on August 12) appellant orally expressed to one Walter Stone an intent to go to the residence of John Hamilton to look for his wife and to ". . . 'shoot the hinges off the door' " there.

It further appears that John Hamilton told appellant after the knocking that he would open the door, and

that he did so open the door because he did not want it broken down. Hamilton testified that prior to opening the door he picked up a 20-inch iron water pipe. Appellant walked through the door carrying the revolver in his right hand, and Hamilton states appellant had the revolver in his right hand, and that he (Hamilton) struck appellant with the iron pipe over the right shoulder.

Appellant then fired the gun at Hamilton according to the latter's testimony, and the bullet was found imbedded in the doorframe located to the right of the door through which appellant entered the Hamilton residence. Hamilton then struck appellant again with the pipe, knocking the revolver out of appellant's hand, under a table.

The wife of John Hamilton was in another room calling the police, and heard the appellant say, ". . . 'I am going to kill every God damned one.' . . ." Later she asked appellant, ". . . 'Bob, why did you come here to kill us, what have we ever done to you [?]' . . ." And appellant responded, ". . . 'I am sorry, I'm sorry.' . . ." The appellant later made a lunge for his revolver, whereupon he was again struck with the pipe.

Appellant contends the evidence at the trial was insufficient to prove premeditated malice or intent to kill John Hamilton.

Contrary to appellant's contention, there is direct evidence of appellant's intention to kill. The wife of Hamilton testified she had been warned by her nephew over the telephone a few minutes before the alleged assault took place, that appellant was coming to their home to kill them. While this evidence was hearsay, it was admitted without objection by appellant at the trial. It has been held that evidence upon a material point admitted without objection by the

appellant, although incompetent, may be sufficient to sustain the verdict. *Beeler* v. *State* (1952), 230 Ind. 444, 453, 104 N. E. 2d 744, 747.

Also, appellant states shortly after firing the revolver and being struck by Hamilton, that he was going to kill everyone. This statement could have been considered by the jury as bearing on appellant's intent at the time the revolver was fired. As stated by this Court in *Davidson* v. *State of Indiana* (1933), 205 Ind. 564, 569, 187 N. E. 376, 378:

> "Any statement or conduct of a person indicating a consciousness of guilt, where at the time or thereafter he is charged with or suspected of the crime, is admissible as a circumstance against him on trial. Evidence of circumstances, which are part of a person's behaviour subsequent to an event with which it is alleged or suspected he is connected with or implicated in, are [sic] is relevant if the circumstances are such as would be natural and usual, assuming the connection or implication to exist. Underhill, Criminal Evidence (2 Ed.) 213."

And, as heretofore recited, when appellant was asked by Hamilton's wife: ". . . 'why did you come here to kill us, what have we ever done to you [?]' . . .", appellant stated in response, ". . . 'I am sorry, I'm sorry.' . . ."

Where one not in custody is accused of a crime and is at liberty to speak, a refusal to deny the accusation tends to show guilt. *Rickman* v. *State; Lawrence* v. *State* (1952), 230 Ind. 262, 267, 103 N. E. 2d 207, 210.

The contention heretofore made by appellant is completely without merit.

The next contention by appellant is that the evidence is insufficient to show an assault, appellant relying on

*Martin* v. *State of Indiana* (1895), 13 Ind. App. 389, 391, 41 N. E. 831, 832.

The Martin case was one in which appellant was convicted of assault on much weaker evidence than in the case at bar, and the judgment was affirmed on appeal. There, one Jester went to appellant's house where Jester's son and wife were. After an argument between the husband and wife over which one was to have the child, the husband (Jester) endeavored to open the screen door into the house when appellant seized a stick of wood and told Jester in emphatic language that if he didn't go away he would knock his head off, and raised the stick over Jester's head. Jester backed off and went out into the yard with appellant repeating his previous statement to Jester. This was all the evidence of an assault and while the Court stated it was very meager and unsatisfactory, further said:

> ". . . Indeed, it is difficult to see how the jury and the trial court could come to the conclusion from it that an unsuccessful attempt at personal violence had been made by the appellant. Yet we doubt not that the jury had the right to infer from the acts and circumstances proved that such an attempt was actually made. If, as a matter of fact, the appellant approached Jester and at the same time endeavored to strike him with the stick in his hand, being prevented from executing his purpose only by the retreat of Jester, he was guilty of an assault. Whether such fact is inferable from testimony alluded to depends much, of course, upon the manner and demeanor of the witnesses on the stand, as well as upon the words used by them. Even a gesture may sometimes go far to illustrate or impress a statement. For this reason the jury and the trial court are in a much better position than we are to draw inferences and deductions from such statements. We do not feel warranted in disturbing the judgment."

. . .

.The case of *Rauck* v. *The State* (1887), 110 Ind. 384, 388, 11 N. E. 450, 452, is also cited by appellant for the rule that:

> "Mere threats will not justify the use of a deadly weapon, unless some overt act, looking towards carrying such threats into execution, has been committed. . . ."

We have no quarrel with this statement of the law, but it is not controlling of the case at bar since it is not applicable to the facts, as will hereafter appear.

What is necessary by way of an overt act to constitute an assault is stated in 1 Wharton's Crim. Law, 12th Ed., §800, p. 1097, as follows, viz:

> ". . . It is difficult, in practice, to draw the precise line which separates violence menaced from violence begun to be executed, for until the execution of it is begun there can be no assault. We think, however, that where an unequivocal purpose of violence is accompanied by an act which, if not stopped or diverted, will be followed by personal injury, the execution of the purpose is then begun, the battery is attempted. . . . And so of threats of violence by an armed assailant apparently designing an attack. But there must be some hostile demonstration of violence which, if allowed its apparent course, would do hurt."

The evidence favorable to appellee in the case before us, together with reasonable inferences, clearly shows that John Hamilton, the prosecuting-witness, was conducting himself in an ordinary and quiet manner in his own home when appellant pounded on the door with his revolver, asked for his wife, and on being told she was not there, demanded that the prosecuting-witness open the door or appellant would ". . . 'blow the God damned door down.'" The prosecuting-witness thereupon

opened the door and appellant entered with a loaded gun in hand.

This evidence was amply sufficient to show threats of violence by an armed assailant apparently designing an attack. It was obviously a hostile demonstration of violence, which if allowed its apparent course, would do hurt. The prosecuting-witness attempted to thwart such an obvious purpose by striking appellant with the pipe after he entered the premises. The discharge of the gun, appellant's statement that he was going ". . . 'to kill every God damned one' . . ."; and other statements recited earlier in this opinion, strongly corroborate the essential elements of the crime of assault with intent to commit a felony as charged in the affidavit.

Appellant's contention that under the evidence he could only have been a trespasser and that the prosecuting-witness used excessive and unreasonable force in attempting to eject or repel him, is too ludicrous for extended discussion. The jury had an abundance of evidence before it from which it could find otherwise, as it obviously did from the result it reached. We cannot disturb that verdict when it is supported by substantial evidence as is the case here.

As no reversible error has been shown, the judgment is affirmed.

Achor, Arterburn and Bobbitt, JJ., concur.

Jackson, J., concurs in result.

NOTE.—Reported in 175 N. E. 2d 27.