JONES *v.* STATE OF INDIANA.

[No. 369S68.   Filed October 8, 1970.   No petition for rehearing filed.]

*Frederick B. Robinson,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *William F. Thompson,* Assistant Attorney General, for appellee.

JACKSON, J.—Appellant was charged by affidavit with the crime of Robbery, said affidavit reading in pertinent part as follows:

"(T)hat NATHANIEL JONES and FRANKIE J. WOODS on or about the 7th day of March, A.D. 1968, at and in the County of Marion in the State of Indiana, did then and there unlawfully, feloniously, forcibly by violence and putting LOU GOLDSTEIN, doing business as SACK'S MARKET, in fear, take from the person and possession of the said LOU GOLDSTEIN, doing business as SACK'S MARKET, money then and there of the value of TWO HUNDRED DOLLARS ($200.00), in lawful money, which property the said LOU GOLDSTEIN, doing business as SACK'S MARKET, then and there lawfully held in his possession and was then and there the property of LOU GOLDSTEIN,

doing business as SACK'S MARKET, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

On March 27, 1968, appellant waived arraignment and entered a plea of not guilty to the crime as charged. On July 25, 1968, the State filed Count II of its affidavit charging the appellant with the crime of Commission of a Robbery While Armed; said additional count reads in pertinent part as follows:

"(T)hat NATHANIEL JONES AND FRANKIE J. WOODS on or about the 7th day of March, A.D. 1968, at and in the County of Marion in the State of Indiana, being then and there over the age of sixteen (16) years, did then and there unlawfully, feloniously, forcibly by violence and by putting LOU GOLDSTEIN, in fear with a firearm, to-wit: REVOLVER, did then and there take from the person and possession of the said LOU GOLDSTEIN, doing business as SACK'S MARKET, money then and there of the value of TWO HUNDRED DOLLARS ($200) in lawful money, said money then and there the property of LOU GOLDSTEIN, doing business as SACK'S MARKET, then and there being contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Indiana."

Appellant waived arraignment and initially entered a plea of guilty as charged to Count II of the affidavit. He later withdrew said guilty plea and entered a plea of not guilty to the crime as charged.

On November 18, 1968, the State filed its Motion to Nolle Count Two; said motion reads as follows:

"Comes now, NOBLE R. PEARCY, Prosecuting Attorney for the 19th Judicial Circuit, and moves the Court to enter a nolle prosequi to the indictment or affidavit in the cause of the State of Indiana vs. NATHANIEL JONES & FRANKIE J. WOODS for the following reasons, to-wit: the state is proceeding in a Jury Trial against the defendants on Count I."

Thereafter, the appellant was ordered released as to Count II of the affidavit.

Trial by jury commenced on November 18, 1968, and on November 19, 1968, the jury returned its verdict finding appellant guilty as charged. After having examined the Pre-Sentence Investigation Report, the court, on December 5, 1968, sentenced appellant to the Indana State Reformatory for not less than Ten (10) nor more than Twenty-Five (25) years.

Appellant filed his motion for new trial on December 19, 1968, said motion attacking the verdict of the jury as not sustained by sufficient evidence and contrary to law. Said motion was overruled by the court on January 3, 1969. Appellant's sole Assignment of Error on appeal is that: "1. The Court erred in overruling Appellant's Motion for a New Trial."

From the evidence adduced at the trial of this cause, viewed most favorably to the State, it appears that shortly before noon on March 7, 1968, two armed men entered a grocery store at 2001 Bellefontaine, City of Indianapolis, owned and operated by Lou Goldstein. At this time Goldstein and two employees, C. W. Dorsey and Sylvester Barner, were present in the store. The two men grabbed Goldstein and took him to the rear of the store where Dorsey and Barner were standing. The smaller hold-up man forced the two employees to lie down while the larger hold-up man accompanied Goldstein to the front of the store where the cash register was located. Goldstein emptied out all the cash from the cash register, and the hold-up man took the money. The latter then ransacked other drawers under the counter and took a bag of coins, some money order blanks and receipts, and a .22 caliber, pearl-handled gas pistol. Goldstein was then returned to the rear of the store and was forced to lie down next to the employees. The hold-up men then left the store. Approximately $250 was found to be missing.

Officer Joe Young of the Indianapolis Police Department arrived at the scene of the crime at approximately 11:53 a.m.,

and, after conferring with Goldstein, Dorsey, and Barner, he broadcast a general description of the hold-up men and what they were wearing. A short time later, Officer Kenneth Hendrickson observed a car which "appeared * * * to be in a hurry to get across the traffic * * *." As he approached the car from the rear, it accelerated to a high rate of speed. Hendrickson gave chase, observed the car come to an abrupt stop, and then saw two individuals run from the car in opposite directions, one carrying a coat. These men were wearing dark trousers and bright green shirts.

After broadcasting a description of these men, Hendrickson walked up to the abandoned car and observed a gun, a pair of sunglasses, and a green hat therein. He then checked the car's registration and determined that it belonged to the appellant. Officer Hendrickson positively identified the appellant and Frankie J. Woods as the two men he saw "bail out" of the car.

At approximately 12:00 noon Officer Kenneth Everton observed a man wearing a green shirt in the 2100 block of North Tacoma. As he started to question him, the man dropped the clothing he was carrying and ran. Everton gave chase on foot but lost sight of the man. He returned to where the clothing had been dropped and found two coats, one black and one blueish grey, containing $48 and a .22 caliber gas pistol. Goldstein testified that this pistol, State's Exhibit #1, was very similar to the one stolen from him during the robbery of his grocery store. Everton positively identified Frankie J. Woods as the man he attempted to question.

Forty minutes later, Officer Marcus Toney observed the appellant and Woods walking in the vicinity of 2300 Fernway. They were dressed in dark trousers and white T-shirts. Toney, believing the men to be the same men described in the broadcasts, arrested them on a charge of robbery. Toney searched the two and found $25 on the appellant and $34.90 on Woods.

Goldstein, Dorsey and Barner were taken to the scene of

appellant's arrest, however, none of them could make a positive identification there of the appellant and Woods as the individuals who perpetrated the robbery. Nonetheless, Dorsey and Barner positively identified them during the course of their in-court testimony. They stated that the appellant was the larger of the two hold-up men, that he had worn a dark coat, sunglasses, and a hat at the time the store was robbed, and also that Woods was wearing a dark blue coat and sunglasses. Dorsey also stated that he recognized the appellant from certain facial features of his.

The statute under which appellant was charged and convicted is Burns Ann. Stat. § 10-4101 (1956 Repl.) ; said statute reads in pertinent part as follows:

> "Whoever takes from the person of another any article of value by violence or by putting in fear, is guilty of robbery, and on conviction shall be imprisoned not less than ten (10) years nor more than twenty-five (25) years, and be disfranchised and rendered incapable of holding any office of trust or profit for any determinate period."

The material elements of the crime of robbery are, therefore, (1) an unlawful taking, (2) from the person of another, (3) of any article of value, (4) by violence or putting in fear.

Appellant argues that the verdict of the jury was not based upon substantial evidence of probative value, that the evidence as presented to the trial court is wholly insufficient to sustain his conviction, and that, therefore, said conviction should be reversed. More specifically, he contends that the State failed to prove beyond a reasonable doubt all of the essential elements of the crime with which he was charged and subsequently convicted.

There can be no doubt but that a robbery was, in fact, committed, and that certain hold-up men unlawfully took numerous articles of value from Lou Goldstein, doing business as Sack's Market, by putting him in fear for his life. Goldstein testified as follows:

"Q. Now when you got to the register, what happened?

A. He had the gun in my back all the time and directed me to empty out the register which I did and he started ransacking the other drawers, checking to see what there was. He got whatever was in the register and there was a bag of coins wrapped in the bottom drawer which he took, and also directed me to empty all the cash out from the cash register which he took, and he then proceeded to rummage around down below where we kept the Money Order blanks and the Money Order receipts which we write there and he put that in his pocket and he looked around further, around there in the back end and then he took me back toward the back end where the other employees were and had me lay down on the floor also.

Q. Approximately how much money was taken?

A. As far as we could ascertain there was approximately fifty dollars in the register not counting the loose change and there was a bag full of coins which I don't know, I would estimate there was sixty, seventy dollars worth of coins wrapped up in this bag, and there was between a hundred fifty and two hundred dollars in the box with (sic) the Money Orders were kept.

Q. And who did this money all belong to?

A. Well, of course, the cash was mine, it belonged to the store, and the Money Order money belonged to the Money Order people.

Q. But it was your obligation to get that money to the Money Order people?

A. Yes.

Q. All right, now how did you feel during this time when the money was being taken?

A. Frightened."

This Court has held on numerous occasions that, when the question of sufficiency of the evidence is raised as an issue on appeal, it will consider only that evidence most favorable to the State together with all logical and reasonable inferences which may be drawn therefrom. *Grimm* v. *State* (1970), 254 Ind. 150, 258 N. E. 2d 407; *McGill* v. *State* (1969), 252 Ind. 293, 247 N. E. 2d 514. Also a conviction will

be affirmed if there is any evidence from which a reasonable trier of fact could infer that the defendant-appellant was guilty beyond a reasonable doubt. *Fair* v. *State* (1969), 252 Ind. 494, 250 N. E. 2d 744; *Butler* v. *State* (1967), 249 Ind. 484, 229 N. E. 2d 471.

Such direct, positive testimony by the witness, Lou Goldstein was sufficient for the jury to find that all the essential elements of the crime of robbery had, in fact, been committed on the date and at the place aforesaid.

Appellant further argues that the evidence was inconclusive to prove that he was one of the perpetrators of the crime. He places primary emphasis upon the fact that neither Goldstein, Dorsey nor Barner got a good look at the hold-up men during the time they were actually in the store, and also that not one of them could positively identify either the appellant or Frankie J. Woods when brought to the scene of their arrest.

The substance of such an argument, rather than being conclusive, merely goes to the weight to be given the evidence introduced before the trial court, and this Court has oftentimes held that it will not weigh the evidence or determine the credibility of the witnesses. *Stock* v. *State* (1966), 247 Ind. 532, 219 N. E. 2d 809.

The evidence was sufficient to prove that the appellant was one of the two persons involved in the robbery of Goldstein's grocery store. Both Dorsey and Barner positively identified the appellant as the larger of the two hold-up men, the one who forced Lou Goldstein to proceed to the front of the store and empty the cash register. They positively identified State's Exhibits #2 and 3, dropped by Frankie Woods, as the two coats worn by the hold-up men. Dorsey testified that he could identify both men due to certain facial features of theirs, and Barner testified, upon being recalled to the stand, that he recognized the appellant from having seen him on the streets of the neighborhood prior to the time the robbery was committed. The circumstances surrounding the robbery in ques-

tion were not conducive to an easy identification of the individuals involved. The hold-up men wore dark clothing, sunglasses, and one wore a hat. Upon the facts as presented, the jury found that the appellant and Frankie J. Woods were the two individuals involved. We cannot say that such a determination was so unwarranted as to cause a reversal of the judgment below.

Appellant also argues that the verdict of the jury is contrary to law for the reason that it was the result of "repeated and continued inferences by the Deputy Prosecuting Attorney in the presence of the jury that the witnesses for the State had been threatened and intimidated in an attempt to prevent or discourage them from testifying against the appellant and co-defendant." (Appellant's brief, p. 16). However, appellant admits that "there was no specific objection or motion made or directed thereto during the trial." In *Rexroat* v. *State* (1964), 245 Ind. 688, 201 N. E. 2d 558, this Court stated:

> "* * * it does not appear that appellant or his counsel made objection at the time to the deputy prosecutor's remarks. It is well settled that a party complaining of error must object thereto and also request the court for action that will remedy the alleged error after it has occurred."

Appellant must be deemed to have waived all questions arising out of such alleged misconduct of the Deputy Prosecuting Attorney. We do not imply that were this case before us De Novo the same result would obtain. The questions raised herein in this appeal go to the weight of the evidence and the credibility of the witnesses. Those are questions for the trier of the facts to determine, not this Court on appeal. *Stock* v. *State, supra; Gibson* v. *State* (1968), 251 Ind. 231, 240 N. E. 2d 812.

The judgment of the trial court is affirmed.

Hunter, C.J., and Arterburn, DeBruler and Givan, JJ., concur.

NOTE.—Reported in 262 N. E. 2d 538.