## BROWN v. STATE OF INDIANA.

[No. 468S77. Filed November 13, 1970. No petition for rehearing filed.]

*Frederick B. Robinson,* of Indianapolis, for appellant.

*Theodore L. Senake,* Attorney General, *Kenneth M. Mc-Dermott,* Deputy Attorney General, for appellee.

JACKSON, J—Appellant was charged by affidavit with the crime of Robbery, said affidavit reading in pertinent part as follows:

"(T)hat ROBERT S. BROWN and JAMES TYLICKI on or about the 24th day of JULY, A. D. 1968, at and in the County of Marion in the State of Indiana, did then and

there unlawfully, feloniously, forcibly by violence and putting ANITA SMITH in fear, take from the person and possession of the said ANITA SMITH, money then and there of the value of ONE HUNDRED TWENTY THREE DOLLARS ($123.00), in lawful money, which property the said ANITA SMITH then and there lawfully held in her possession and was then and there the property of JAMES WHITLOCK, doing business as HOUSE OF JAMES ACCREDITED BEAUTY COLLEGES, then and there being contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Indiana."

On November 6, 1968, appellant waived arraignment and entered a plea of not guilty to the crime as charged. On November 22, 1968, appellant filed his waiver of jury trial, and this cause was immediately tried to the court without the intervention of a jury. On the same day the court found appellant guilty as charged and thereafter ordered a Pre-Sentence Investigation Report to be filed. On December 5, 1968, the court sentenced appellant to the Indiana State Reformatory for not less than ten (10) nor more than Twenty-five (25) years.

Appellant filed his motion for new trial on January 3, 1969, said motion attacking the finding of the trial court as not sustained by sufficient evidence and contrary to law. Appellant's motion for new trial was overruled on January 10, 1969. Appellant's sole Assignment of Error on appeal is that: "1. The Court erred in overruling appellant's Motion for a New Trial."

From the evidence adduced at the trial of this cause, viewed most favorably to the State, it appears that at approximately 4:30 p.m. on July 24, 1968, a man, wearing a tan outfit with a tan hood and armed with a sawed-off shotgun, entered the House of James Beauty School and approached an employee, Anita Smith, who was proceeding to check out her cash register. The hold-up man shouted that a hold-up was in progress, made threats on Mrs. Smith's life, and demanded that she give him all the money in the cash register. She

placed approximately $120 to $130 in cash, checks, and loose change in a Federal Reserve money bag and handed the bag to the hold-up man. He then left the premises accompanied by a companion who apparently was guarding the rear entrance to the building. The two men fled in what was described as "a late model black car, an old, you know, old car."

Patrolman Johnson was stopped at the corner of Crestview and Kessler when he received a report that a black 1951 or 1952 Ford had just been involved in a hold-up on North College Avenue, a short distance from where he was then stopped. Officer Johnson had just seen such a car and its two occupants heading south on Crestview. He turned around and proceeded toward the car, and, as he approached, he saw the driver thereof fighting with another person. The driver of the car fled upon observing Officer Johnson advancing toward him. Johnson positively identified the appellant as the driver of the car and the one that fled. With respect to the other occupant of the car, Johnson could only identify him as having very long hair.

Johnson immediately notified other law enforcement officials of what had occurred and then proceeded to examine the automobile in question. On the front seat he found a tan hood and cape outfit, later admitted into evidence as State's Exhibit #1, and a twelve gauge shotgun, later admitted into evidence as State's Exhibit #2.

Deputies Dunbar and Saunders of the Marion County Sheriff's Office assisted in the subsequent search for the hold-up men. While searching a garage behind 6018-6020 North College Avenue, the deputies came upon two men hiding in a corner thereof in a crouched position. These two men were positively identified at the trial as the appellant and one James Tylicki. Tylicki was described by the arresting officers as having very long, shoulder-length hair.

Appellant and Tylicki were subsequently searched at the scene of their arrest by Officer Dennis Hawkins in the presence

of Deputies Dunbar and Saunders and Officer William Writt. At the time he was searched, Tylicki had on his person the following items: $76.00 in currency, $5.00 in a role of dimes, $2.00 in a role of nickels and 1 twelve gauge shotgun shell. Appellant at the time he was searched was similarly possessed of the following items: 22 loose quarters, 9 nickels, 55 loose pennies, 1 automobile key, 1 screwdriver and 1 Federal Reserve money bag, later admitted into evidence as State's Exhibit #3. Neither appellant nor Tylicki had billfolds; the money and other items listed above were stuffed in their pockets.

Mrs. Smith and Verla Poland, the office manager of the beauty college who was also present during the hold-up, identified the shotgun, State's Exhibit #2, as the one used during the commission of the robbery. Mrs. Smith stated specifically that she was able to identify the shotgun because of the "fancy silvery stuff" appearing thereon. (Tr. p. 30). She was also able to identify the money bag, State's Exhibit #3, as the one taken from her because of certain distinctive markings appearing thereon. Both Mrs. Smith and Mrs. Poland stated that the tan hood and cape outfit, State's Exhibit #1, was the one, or similar to the one, worn by the man who robbed Mrs. Smith of the contents of her cash drawer.

Each of appellant's arguments present substantially the same question for our consideration, i.e. whether or not the finding of the trial court was sustained by sufficient evidence. In deciding questions of this nature this Court is bound by its long-standing rule that it will consider only that evidence most favorable to the State, together with all the logical and reasonable inferences which may be drawn therefrom. *Lambert* v. *State* (1969), 252 Ind. 441, 249 N. E. 2d 502; *McGill* v. *State* (1969), 252 Ind. 293, 247 N. E. 2d 514. Also, a conviction will be affirmed if there is substantial evidence of probative value from which a reasonable trier of fact could infer that the appellant was

guilty beyond a reasonable doubt. *Smith* v. *State* (1970), 254 Ind. 401, 260 N. E. 2d 558.

Appellant contends that the immediate victim of the hold-up, Anita Smith, was not "put in fear" by the man who confronted her while she was checking out her cash register for the day. Her testimony certainly suggests otherwise.

"Q. Did you have any particular feelings at the time this thing was going on?
A. Well, in regard to what he said about this, you do not look down a gun barrel at somebody and not feel fear for your life, especially when they are threatening to blow a hole through you * * *." (Tr. pp. 45, 46).

In any event, this Court has previously stated, in *Cross* v. *State* (1956), 235 Ind. 611, 137 N. E. 2d 32, that:

"The expression 'putting in fear' is described * * * as follows:
'And when it is said to be done by putting in fear, this does not imply any great degree of terror or affright in the party robbed: *it is enough that so much force, or threatening by word or gesture, be used, as might create an apprehension of danger, or induce a man to part with his property without or against his consent* * * *."

Certainly, the conduct of the hold-up man in the case at bar was sufficiently threatening to cause Mrs. Smith to part with the money under her possession and control against her consent.

Appellant further contends that it was not proven beyond a reasonable doubt that any money or other thing of value was taken from James Whitlock d/b/a House of James Beauty College. The evidence on this point is sufficient to sustain appellant's conviction. Mr. James Whitlock testified that he was the owner of the House of James Beauty College on July 24, 1968, and that he owned the money taken in by that business on said date. Anita Smith, an employee of the House of James, described the robbery as follows:

"Q. What happened precisely?

A. Well, every evening after we have got our last customer in we generally collect and proceed to check out, and I was in the process of doing this and it was about four-thirty and I had my bank deposit slips laid out and the money, starting to count it out against the tickets that we take in and the petty cash was in the drawer and I had the drawer open, taking things out and the front door opened and in walked a man dressed in, well it was a tan outfit with a tan hood and at first I though it was, like I said, a joke because no one walks in off the street in the daylight, I didn't think, and then he stood there and I saw he was armed, he had a shotgun or a sawed off gun, that gun there, and he began to shout at me that this was a holdup and that he wanted all of the money and he used obscene language and he made threats on my life if I didn't give him every bit of it and I asked him if he wanted everything, even the pennies and everything, *and I gave him everything that was in the drawer,* and I even gave him a bag to carry it in because he didn't have a bag on him and there was one stationed at the back door, which I did not see until he was leaving, and the one at the front door, this happened, it all occurred in five minutes, if that long, *and both fled by the back entrance* and they made their getaway in a late model black car, an old, you know, old car.

Q. How much money did you have in the cash drawer at that time?

A. It was approximately a hundred and twenty to a hundred and thirty dollars, counting the petty cash.

Q. How much did you give them when they * * *

A. *Well, they got everything that I was sending to the bank and everything that was in the drawer, the petty cash.*

Q. *So approximately a hundred and twenty to a hundred and thirty dollars, is that correct?*

A. *Uh huh."* (Emphasis supplied). (Tr. pp. 22, 23).

Such evidence was sufficient to enable the trier of fact to find that money and other articles of value owned by James Whitlock d/b/a the House of James were, in fact, unlawfully taken from the person and possession of Anita Smith.

Appellant finally argues that the State failed to prove beyond a reasonable doubt that it was he who committed the robbery in question. Admittedly, the evidence on this point is wholly circumstantial, for none of the victims of the crime could positively identify the appellant as one of the two men who entered the beauty college on the date in question and relieved Mrs. Smith of the contents of her cash register. However, this Court has previously held that "(c)ircumstantial evidence may be resorted to in order to establish the guilt of a defendant accused of robbery." *Finton* v. *State* (1963), 244 Ind. 396, 193 N. E. 2d 134; *Sinks* v. *State* (1956), 235 Ind. 484, 133 N. E. 2d 563.

We feel there exists in the record of this cause substantial evidence of probative value to connect appellant with the robbery in question. Anita Smith stated that an old black car was used by the two hold-up men to effect their escape; within seven minutes after the robbery was committed, the appellant was seen, approximately one-half to three-quarters of a mile from the scene of the crime, driving a 1951 or 1952 black Ford. Appellant fled from said car upon seeing a police officer approach. In *Meredith* v. *State* (1965), 247 Ind. 233, 214 N. E. 2d 385, this Court stated:

> "Evidence of escape or attempted escape and avoidance of arrest or capture is always competent evidence of the consciousness of guilt and a matter for the consideration of the jury. A statement in Underhill, Criminal Evidence, p. 213 (2d ed. 1910) is quoted with approval by this Court in *Smith* v. *State* (1961), 241 Ind. 665, 668, 175 N. E. 2d 27, 29:
>
>> 'Any statement or conduct of a person indicating a consciousness of guilt, where at the time or thereafter he is charged with or suspected of the crime, is admissible as a circumstance against him on trial. Evidence of circumstances, which are part of a person's behavior subsequent to an event with which it is alleged or suspected he is connected with or implicated in, are (sic) is relevant if the circumstances are such as would be natural and usual, assuming the connection or implication to exist. Underhill, Criminal Evidence (2 Ed.) 213.' "

A search of the car led to the discovery of a tan hood and cape outfit which was positively identified as, or similar to, the outfit worn by "the guy that was holding up the register." (Tr. p. 49). A shotgun, positively identified as the one used by the hold-up man, was also recovered.

Forty minutes after he fled from the automobile, appellant was found hiding in a garage approximately 6-8 blocks from where the car was abandoned. Appellant was placed under arrest and subsequently searched. One of the items found on his person was a Federal Reserve money bag; said bag was positively identified by Mrs. Smith as the one she handed to the hold-up man.

Taken collectively, such evidence was sufficient to enable the trier of fact to conclude that appellant was, in fact, the man who robbed the House of James Beauty College on the date in question.

In *Jones* v. *State* (1970), 255 Ind. 57, 262 N. E. 2d 538, this Court was similarly confronted with a factual situation which involved a certain degree of uncertainty with respect to the identity of those who perpetrated the crime there in question. We held that:

> "The circumstances surrounding the robbery in question were not conducive to an easy identification of the individuals involved. The hold-up men wore dark clothing, sunglasses, and one wore a hat. Upon the facts as presented, the jury found that the appellant and Frankie J. Woods were the two individuals involved. We cannot say that such a determination was so unwarranted as to cause a reversal of the judgment below."

For this Court to sustain the conviction in *Jones* and reverse appellant's conviction in the case at bar, especially in light of the other evidence presented, we would be placing a premium on the cleverness of one's disguise, thus rewarding the criminal better camouflaged and punishing the one who lacks the ingenuity to devise an acceptable disguise. This we cannot and will not do.

The judgment of the trial court is affirmed.

Arterburn, DeBruler and Givan, JJ., concur; Hunter, C.J., concurs in result.

NOTE.—Reported in 263 N. E. 2d 534.