**James H. DUNVILLE, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 678S109.**

Supreme Court of Indiana.

Aug. 20, 1979.

Stephen M. Sherman, Indianapolis, for appellant.

Theo. L. Sendak, Atty. Gen., Philip R. Blowers, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Appellant was charged in Marion County Criminal Court, Division II, with seven counts, each of which was the offense of commission of a felony while armed, to-wit: robbery. He was tried by jury on March 8, 1978, found guilty on each count, and sentenced to a term of fifteen years on each of the seven counts.

Appellant raises four issues for our review:

1) whether the trial court erred in failing to discharge him pursuant to Ind.R.Crim.P. 4;

2) whether the trial court erred in refusing to grant a mistrial based on the manner in which the prosecutor examined one of the State's witnesses;

3) whether the trial court erred in sentencing appellant to a term which was disproportionately greater than those of his co-defendants; and,

4) whether the evidence is sufficient to sustain the conviction.

On May 25, 1977, at approximately 2:00 p. m., the Graham Furniture Shop, located in Castleton, Marion County, was robbed by three males, later identified as Brown, Morton, and appellant Dunville. None of the men wore masks or any other covering on their faces. One of the witnesses recognized one of the men as having been in the store before. One of the men, later identified as appellant, was described as a negro male wearing a white T-shirt and green trousers. Brown was carrying a brown paper bag. As the men were shown furniture by an employee, Brown pulled a sawed-off shotgun from the bag and handed it to Morton. The employees were then ordered to the back of the store, where their personal belongings, including money and jewelry, were taken. Funds belonging to the store were also taken. The employees were ordered to lie face down and remain in that position for ten minutes after the three assailants left.

### I.

Appellant argues the trial court erred in not granting his motion for discharge. Appellant was arrested on August 4, 1977, but was unable to appear for arraignment until December 9, 1977, due to his hospitalization. When he did appear on December 9, he requested and was granted a speedy trial pursuant to Ind.R.Crim.P. 4(B)(1). The trial was set for January 26, 1978. Appellant moved for a continuance on January 24,

offering to waive his right to a speedy trial, but the court denied this motion. A pre-trial conference was held on the day before trial, January 25th. On January 26, a severe blizzard hit the city of Indianapolis, making it impossible for the courts to operate. Thereafter, on February 8, the court re-set the cause for trial with the following entry:

"Cause now set for jury trial on March 8, 1978, at 9:30 a. m., and pre-trial conference is set for March 7, 1978, at 9:30 a. m. Continued due to blizzard on January 26, 1978.

On the following day, the court made the following entry:

"Notice sent to attorney of continuance date. Speedy trial request heretofore set now re-set for trial by jury on March 8, 1978, at 9:30 a. m. with pre-trial conference set for March 7, 1978, at 9:30 a. m., due to no fault of the court, prosecutor or defense.

On February 21, appellant filed a written motion for discharge pursuant to Ind.R. Crim.P. 4(B); this motion was denied on the same date. At the pre-trial conference on March 7, and again prior to trial on March 8, appellant renewed, and the court overruled, his motion for discharge.

■ Appellant first claims that he was not tried within six months of his arrest as required by Ind.R.Crim.P. 4(A). This is a frivolous argument, inasmuch as it was admittedly impossible to try appellant because he was hospitalized and unable to attend court even for arraignment until December 9, 1977. Therefore, he was not being held in jail awaiting trial until December 9, and Rule 4(A) did not apply until that time.

■ His next contention is that the speedy trial rule, Ind.R.Crim.P. 4(B)(1), required that he be tried within seventy days after December 9, the date on which he made his speedy trial motion. He calculated this date to be February 19, 1978. He argues that the record shows that the delay from January 26 to February 19 was not the fault of the appellant; therefore the only grounds the court would have under the rule for trying appellant at a time be-

yond the seventy-day time period would be that the court calendar was congested. He further argues that the record does not show that the prosecutor filed· a motion showing that the calendar was congested, and therefore the court had no grounds from which to make such a finding.

Appellant admits that in *Gill v. State,* (1977) Ind., 368 N.E.2d 1159, this Court held that under certain circumstances the trial court itself may take cognizance of a congested court calendar by making a record of this fact, and that it is not necessary for the prosecuting attorney to bring it to the attention of the court by filing the motion provided for in Rule 4(B)(1). *See Harris v. State,* (1971) 256 Ind. 464, 269 N.E.2d 537. However, appellant attempts to distinguish *Gill* by arguing that neither the prosecutor nor the court showed in the record that there was a congested calendar which made it impossible to try him by February 19, and that there are no other grounds under the rule for failing to meet that deadline.

The court noted on the record on February 8 and 9 that it was impossible to meet the original trial of this cause, and set the trial for a time approximately thirty days from that point. The case in fact was tried at that time. Rule 4(B)(1) must be given a reasoned interpretation in light of the circumstances facing the court. When an act of God incapacitates an entire community, including the court system and the jurors who must come from all corners of the county to serve, there can be no doubt that the court calendar is congested and confounded. The period from January 26 to February 8, was lost to everyone through the fault of no one, because of the snow storm. The period from February 19 to March 8 covered virtually the same period of time. Furthermore, rather than immediately notifying the court of his dissatisfaction after receiving notice of the new trial date, appellant waited until February 21 before he made any complaint. We find that the court properly denied the motion for discharge. *See Heflin v. State,* (1977) Ind., 370 N.E.2d 895; *Harris v. State,* (1971) 256 Ind. 464, 269 N.E.2d 537; *Tyner v. State,* (1975) Ind.App., 333 N.E.2d 857.

## II.

Appellant next claims the State deliberately and improperly attempted to influence and prejudice the jury during its examination of Detective Davis of the Marion County Sheriff's Department. Most of the incidents to which appellant refers us are questions that were objected to because they called for hearsay responses. The objections were sustained by the court. In other instances, the witness started to repeat a statement made to him out of court and outside the presence of the defendant; again, objections under the hearsay rule were sustained by the court before the witness finished his answer. These incidents do not appear to have been intentional or prejudicial. The trial judge stated to defense counsel that he saw no grounds for finding that the prosecutor was intentionally attempting to do anything improper. These appear to be nothing more than typical incidents which occur in the examination of any witness.

Appellant also argues that the State attempted to inject an "evidentiary harpoon" into the proceedings through Detective Davis' testimony. Davis testified that as he was riding with State Trooper Cole in an attempt to find and arrest appellant, they saw appellant riding in an automobile immediately in front of them. Cole attempted to stop Dunville, and Davis said he observed Dunville look in his rear view mirror and then accelerate the vehicle and attempt to flee from them. They pursued him, and when Dunville reached 39th Street and Forest Manor, his vehicle "spun out" and ran up onto an embankment. Davis exited his vehicle, drew his pistol, and shouted, "Stop, Sheriff!" Dunville then rapidly backed up his car in the direction of Davis, requiring Davis to jump out of the way to avoid being struck. Dunville then drove off, and the officers again pursued him. He proceeded south on Forest Manor and ran the vehicle into the porch of a residence at 36th Street and Forest Manor. He then fled on foot and was not apprehended at that particular point.

■ Appellant complains that the State attempted to unfairly prejudice the jury by the "harpoon" in Davis' statement that Dunville tried to run over him. The court struck the statement from the record and admonished the jury not to consider it. The officer then testified that the car backed up rapidly toward him and that he was forced to jump out of the way to avoid being struck. We do not agree with appellant's characterization of this evidence as an "evidentiary harpoon." Evidence of flight or an attempt to avoid arrest is admissible to tend to show guilt or knowledge of guilt. *Lofton v. State*, (1978) Ind., 378 N.E.2d 834; *Thomas v. State*, (1970) 254 Ind. 561, 261 N.E.2d 224; *Layton v. State*, (1968) 251 Ind. 205, 240 N.E.2d 489. This was, accordingly, proper evidence to be presented to the jury. The officer's interpretation of the situation does not seem unreasonable under the circumstances of the chase. The court struck the conclusion he drew and required him to state actual facts. Under the facts of this case the court was not required to grant a mistrial to prevent the appellant from being placed in a position of grave peril from which a curative instruction could not extricate him. We therefore find no reversible error as to this issue. *Misenheimer v. State*, (1978) Ind., 374 N.E.2d 523; *White v. State*, (1971) 257 Ind. 64, 272 N.E.2d 312.

### III.

■ Appellant challenges his sentence as being disproportionately greater than the sentences given to his co-defendants. Appellant received a sentence of fifteen years from the jury for each of the seven counts on which he was convicted. He and his two co-defendants were charged under the robbery statute, Ind.Code (Burns (1975) § 35–12–1–1, which at that time provided for a determinate period of imprisonment of not less than ten nor more than thirty years. The other two defendants entered guilty pleas and were sentenced by the court. Brown entered into a plea agreement and was given a six year determinate sentence, and Morton entered a guilty plea without a plea agreement and was given a ten year determinate sentence. Appellant feels this is unequal treatment and argues that, because he received a greater sentence, he was penalized for asserting his constitutional right to a trial by jury. Though the sequence of events may have had this effect, it does not give rise to a constitutional claim nor justify reduction of the sentence. The sentence was within the statutory limits set by the legislature. We are not at liberty to set aside a conviction and sentence because it may appear to some to be severe. *Dodson v. State*, (1978) Ind., 381 N.E.2d 90; *Hollars v. State*, (1972) 259 Ind. 229, 286 N.E.2d 166. *See Wilson v. State*, (1977) Ind., 374 N.E.2d 45.

### IV.

At the close of the State's evidence, appellant moved for judgment on the evidence. This motion was overruled by the court. Appellant then offered no evidence on his own behalf. He now claims the court erred in overruling his motion for judgment and in not finding that there was insufficient evidence to sustain the verdict.

■ In order to avoid a judgment on the evidence the State needs only to establish a prima facie case. It need not show that every reasonable doubt has been overcome. There must be a total absence of evidence on an essential element for a judgment on the evidence to be appropriate. *Mendez v. State*, (1977) Ind., 367 N.E.2d 1081; *Robinson v. State*, (1974) Ind., 309 N.E.2d 833.

■ Appellant claims that he was not sufficiently identified in regard to some of the robberies and, therefore, that there was an insufficiency of evidence in this regard. He argues specifically that evidence was lacking on essential elements relating to two of the robberies because the victims were unable to positively identify Dunville as one of the perpetrators. He makes the same claim with respect to the robberies of two other victims who did not testify at the trial. However, several witnesses were able to describe appellant's clothing. Others positively identified him as one of the perpetrators and, specifically, as the one

who emptied the store's cash box. While two of the victims did not positively identify appellant, they did give supportive evidence of his identity. In addition, while two of the victims did not testify, other witnesses did see the robberies of these two, and did identify appellant. Thus, the trial court did not err in overruling appellant's motion for judgment on the evidence, and properly determined that there was sufficient evidence from which the jury could have found beyond a reasonable doubt that the appellant committed the seven robberies. *Lottie v. State,* (1974) 262 Ind. 124, 311 N.E.2d 800; *Jones v. State,* (1970) 255 Ind. 57, 262 N.E.2d 538. *See Watson v. State,* (1957) 236 Ind. 329, 140 N.E.2d 109.

Finding no reversible error, we affirm the trial court.

All Justices concur.