BOBBY KERMIT GIBSON, HAROLD DONNIE GIBSON *v.*
STATE OF INDIANA.

[No. 370S54. Filed August 4, 1971.)

*R. E. Moore, Michael T. Dugan II,* of Indianapolis, for appellants.

*Theodore L. Sendak,* Attorney General, *Robert F. Hassett,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendants (Appellants) were convicted of Second Degree Burglary under Burns Ind. Stat., 1956 Repl., § 10-701(b) (Acts 1951, ch. 148, § 4). Their appeal presents three questions: (1) Sufficiency of the evidence, (2) Adequacy of *Miranda* warning and waiver and (3) Validity of verdict returned after a jury had separated without leave of court.

The evidence most favorable to the State discloses that the defendants were arrested at the scene of the crime within a few minutes after the arresting officers arrived in response to a signal from a burglar alarm. The furniture store premises which had been burglarized had two entrances at the back. The inside of the store was visible from the front through show windows. Upon arrival, one of the officers viewed the defendants through the showroom window, walking in a bent over position as if carrying something. One of the back doors had been forced open. A hi-fi set inside the store was found in a position other than that in which it had been at the time the store was closed for the night several hours earlier. A screw driver, which might have been used to effect the entry, and which had been seen in the hand of one of the defendants at the time he was first viewed

in the premises, was found on a chair beside him when he was arrested. A tire tool was found three or four feet from the point where the other defendant was standing at the time he was arrested inside the store.

The essential elements of the crime of Second Degree Burglary is a *breaking and entering with the intent* to commit a felony therein. The evidence, as stated, was sufficient to establish these elements. At the trial, defendants testified that they had entered the premises in search of water for their overheated vehicle. The jury was not bound to accept this explanation for their unauthorized presence. Possession of stolen goods is not a requisite of the crime, and from all the circumstances stated, the jury could reasonably infer that appellants broke and entered the premises with the intent to commit a felony. When the sufficiency of the evidence is raised as an issue on appeal, this Court will consider only that evidence most favorable to the State together with all logical and reasonable inferences which may be drawn therefrom. *Lambert* v. *State* (1969), 252 Ind. 441, 249 N. E. 2d 502; *McGill* v. *State* (1969), 252 Ind. 293, 247 N. E. 2d 514; *Croney* v. *State* (1969), 252 Ind. 319, 247 N. E. 2d 501.

The conviction will be affirmed if, from that viewpoint, there is substantial evidence of probative value from which the trier of fact could reasonably infer that the appellant was guilty beyond a reasonable doubt. *Taylor* v. *State* (1971), 256 Ind. 170, 267 N. E. 2d 383; *Boss* v. *State* (1970), 255 Ind. 222, 263 N. E. 2d 546; *Brown* v. *State* (1970), 255 Ind. 227, 263 N. E. 2d 534.

Following the arrest, the defendants made confessing statements to police officers while in custody at the police station. The court overruled the defendants' motion to suppress these confessions predicated upon the claim that they were made only because leniency was promised as a reward and that they had not been properly warned of their constitutional right to remain silent, to have counsel or of the effects of

any statements which they might make. The following facts were developed at the hearing on defendants' motion to suppress conducted during the trial on the merits.

After the defendants were arrested inside the store, the police read the *Miranda* warning to each defendant. Each was advised that he had the right to remain silent; that anything he said could and would be used against him in court; that he had the right to talk to an attorney and have him present during questioning; and that if he could not afford to have an attorney, one would be appointed to represent him before questioning, if he wanted one. Each defendant was asked if he understood these rights, and each replied that he did. Each defendant was then asked if he wanted to talk to the police at that time. Defendant Harold Gibson indicated that he did not want to talk to the police. Neither defendant signed the waiver at the store, and neither defendant requested an attorney.

Defendants were then taken to the police station. There one of the police officers read the following *Miranda* warning to the defendants:

"Before we ask you any questions, it is our duty as police officers to advise you of your rights and to warn you of the consequences of waiving your rights.

You have the absolute right to remain silent.

Anything you say to us can be used against you in court.

You have the right to talk to an attorney before answering any questions and to have an attorney present with you during questioning.

You have this same right to the advice and presence of an attorney whether you can afford to hire one or not. We have no way of furnishing you with an attorney, but one will be appointed for you, if you wish, if and when you go to court.

If you decide to answer questions now without an attorney present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to an attorney."

The officer then showed the following waiver to the defendants and asked them to read it:

"I have read the above statement of my rights, and it has been read to me. I understand what my rights are. I wish to make a voluntary statement, and I do not want an attorney. No force, threats, or promises of any kind or nature have been used by anyone in any way to influence me to waive my rights. I am signing this statement after having been advised of my rights before any questions have been asked of me by the police."

He told them that this showed that the police did read their rights to them and that no force was used against them to induce them to sign it. Both defendants read the warning and waiver. They were asked if they would like to sign them, and they proceeded to sign. Prior to such signing, however, the defendants made inquiry concerning what would happen if they did not sign. The following is the testimony given on the subject by one of the police officers:

"Q. Now Mr. Hestand did you hear one or both of the defendants ask Mr. Clark what will happen if I don't sign the waiver?

A. He asked him if he had to sign it.

Q. Right. And what was Mr. Clark's response to that?

A. He told him he would just write across the top of it 'Refused' and he would sign and I would witness it that it was refused.

Q. He didn't say that if they didn't sign it, he would sign it for them? Isn't that right? With a witness?

A. Just sign his name.

Q. Right. That if they didn't sign it, he would sign his name.

A. He would sign it that he read the rights to them.

Q. So they ask him then what will happen if I don't sign it?

A. Yes sir.

Q. And he said if you don't sign it I will put 'Refused' here and I will sign it. Isn't that correct and with a witness.

"A. Yes sir.

Q. So then they signed it. They signed the waiver then?

A. Yes sir."

The defendants contend that they understood from the above that if they did not sign the waiver the police would sign for them, and that they made their statements only by reason of such confusion and a promise of leniency. Although it was wholly unnecessary for the police officers to take any action in the nature of an endorsement upon the waiver, if the defendants declined to sign, nevertheless we cannot say that such statements were either designed to or in fact did mislead the defendants. Nor can we find anything in the record indicating that any promise of leniency was made. Statements were made by one of the officers to the general effect that it would be easier for everybody if the defendants cooperated. We cannot construe this as a representation of leniency.

A heavy burden rests upon the State to demonstrate that the appellant knowingly, voluntarily and intelligently waived his right to remain silent and to consult with appointed counsel. *Miranda* v. *Arizona* (1966), 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694; *Nacoff* v. *State* (1971), 256 Ind. 97, 267 N. E. 2d 165; *Thompson* v. *State* (1971), 256 Ind. 48, 267 N. E. 2d 49.

As this Court said in *Nacoff* v. *State, supra:*

"The legal standard to be applied in determining whether an accused, who has been properly advised of his rights and has signed a waiver, has voluntarily waived his rights is the same as that used in the Pre-Miranda coerced confession cases. The question is whether, looking at all the circumstances, the confession was free and voluntary, and not induced by any violence, threats, promises, or other improper influence." 267 N. E. 2d at 167.

We cannot say that the State failed to sustain the burden upon the motion to suppress.

Defendants state in their brief that while the jury was deliberating, one of the jurors separated herself from the

others for approximately twenty-five minutes, without leave of court, and this was one of the grounds in their motion for a new trial. The record fails to substantiate such claim. The only evidence of reference to such an occurrence is that upon such a charge having been made, the court heard evidence on the issue and found that the juror became ill and left the jury room to obtain a drink of water and to take medicine; that she was gone for not more than five minutes, was in the presence of the bailiff during all of such time, that the jury did not deliberate in her absence, that it had, in fact, reached agreement prior to her becoming ill and that no occurrence intervened to affect the jury's verdict.

Separation of a jury without leave of court is not a cause for new trial when it appears that no harm resulted to the defendant. *Bryant* v. *State* (1964), 246 Ind. 17, 202 N. E. 2d 161; *Jones* v. *State* (1898), 152 Ind. 318, 53 N. E. 222; *Beyerline* v. *State* (1896), 147 Ind. 125, 45 N. E. 772; *Masterson* v. *State* (1895), 144 Ind. 240, 43 N. E. 138.

The judgment of the trial court is affirmed.

Arterburn, C.J. and Givan, DeBruler and Hunter, JJ., concur.

NOTE.—Reported in 271 N. E. 2d 706.