**William FOLLRAD, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 481S94.

Supreme Court of Indiana.

Sept. 18, 1981.

James F. Stanton, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., Margarett Knight, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, William Follrad, was convicted by a jury of murder. Ind.Code § 35–42–1–1 (Burns 1979 Repl.). He was sentenced to a term of fifty years in the Indiana Department of Correction. In his direct appeal, he presents the following issues for our review:

1. Whether the trial court erred when it permitted the jurors to separate and return to their homes in the midst of their deliberations; and

2. Whether the verdict of the jury was contrary to law in that it was not supported by the evidence.

Due to our disposition of issue one, we need not reach the merits of defendant's challenge to the sufficiency of the evidence.

The record reveals that at approximately 5:15 p. m. on October 2, 1980, the jury retired to deliberate over the law and evidence presented at trial. Roughly seven hours later, at about 1:30 a. m., the jury informed the court it had not yet been able to reach a verdict. The jurors were polled by the court; ten of the jury's members indicated that it would be futile to continue their deliberations at that hour. Over defendant's objection, the court permitted the jurors to return to their individual homes with instructions to return to court at 9:00 a. m. Prior to departing the court admonished them to go directly home, to stop nowhere, to talk with nobody about the case, nor allow anyone to so address them, and to return to the courtroom in like fashion.

Defendant maintains the trial court erred in permitting the jurors to separate and return to their homes in the middle of deliberations. We agree.

In *Walker v. State*, (1980) Ind., 410 N.E.2d 1190, this Court held that in Ind. Code § 35–1–37–4 (Burns 1979 Repl.), our legislature mandated that jurors are to remain together from the time their deliberations begin in a criminal case until the time the verdict is returned. *See also, Bales v. State*, (1981) Ind., 418 N.E.2d 215; *McGaughey v. State*, (1981) Ind.App., 419 N.E.2d 184. The constraint serves the obvious and vital purpose of insuring that each juror's individual assessment and verdict are not influenced by matters extraneous to that information presented at trial.

Only compelling "exigent circumstances" warrant a violation of the rule. *Walker v. State, supra; see Gibson v. State*, (1971) 257 Ind. 23, 271 N.E.2d 706, and *Bryant v. State*, (1964) 246 Ind. 17, 202 N.E.2d 161. Here, as in both *Walker* and *Bales*, the record reveals the separation was purely for the sake of the court personnel's "convenience." Separation of jurors as a matter of convenience is not acceptable. *Walker v. State, supra; Bales v. State, supra.* The trial court erred when it permitted the jurors to separate and return to their homes in the midst of their deliberations.

The state maintains, however, that any error in the separation of the jurors was harmless in nature and does not warrant a new trial. In support of its position, the state relies on our decision in *Walker v. State, supra*, and argues it has satisfied its burden to demonstrate the separation neither influenced the individual jurors' assessment of the law and evidence nor affected their ultimate and collective verdict.

It is true, as the state argues in its brief, that *Walker* does not stand for the proposition that the separation of jurors constitutes reversible error *per se.* In *Walker*, where the jurors were permitted to separate in the midst of the deliberations for a period of five days, our analysis included a two-step test by which a separation of jurors could be held harmless. We indicated that if the state satisfied its burden to prove beyond a reasonable doubt that the deliberations of the jurors were not affected by the separation and that the verdict

"clearly appears to be right upon the evidence," *Walker v. State, supra*, Ind., 410 N.E.2d at 1193, the error would be deemed harmless.

Via this binary test, the state presents a compelling argument. To satisfy step one of the *Walker* inquiry, it points to the trial court's poll of each juror subsequent to their verdict, wherein each juror was asked whether he or she had gone directly home, whether he or she had returned directly to the courtroom in the morning, whether he or she had discussed the case with anyone during the hours of separation, whether he or she had anyone attempt to raise the subject of the trial with him or her, whether he or she had heard anything about the case during the hours of separation, and whether anything had occurred during the hours of separation that, in any way, could have influenced his or her verdict. Individually, the jurors indicated their travels to and from the courthouse had been direct. Each juror answered the other questions in the negative.

To satisfy step two of the *Walker* inquiry, the state points to the evidence produced at trial and argues the jury's verdict "clearly appears to be right." Certainly the evidence is sufficient to withstand a challenge to its sufficiency; whether it would support the conclusion the verdict was clearly right, as required by *Walker*, is a question we need not decide.

In *Bales v. State, supra*, Justice Pivarnik, for this unanimous Court, emphasized the import of our *Walker* rationale:

"We reiterate the clear thrust of *Walker v. State* : barring exigent circumstances, *e.g., Gibson v. State, supra* [(1971) 257 Ind. 23, 271 N.E.2d 706], the trial court should not permit the jury to separate once their deliberations have begun." *Bales v. State, supra*, Ind., 418 N.E.2d at 218.

Here, however, no "exigent circumstances" exist to justify the separation of the jurors. The possibility the jury's deliberations would extend beyond an hour which would necessitate their repose was foreseeable; faced with that specter, arrangements to

sequester the jury should have been made in the event sequestration became necessary.

Implicit to Justice Pivarnik's statement quoted above is this Court's recognition that a separation of jurors is fraught with opportunity for a juror's assessment of the evidence to be influenced. Regardless how stern and rigorous the pre-separation admonishments might be, an inadvertent exposure to extraneous matters, whether via media dissemination of news, public discourse and conjecture, or more subtle influences, is an inevitable prospect. Compliance with the requirement that jurors remain together for the duration of their deliberations serves to insure that, in fact, the verdict is a product of deliberations free of any influence extraneous to the law and evidence presented at trial. The integrity of a jury's deliberations, a matter critical to continued public confidence in our criminal justice system, should remain entrusted to a trained bailiff, sworn to exercise his duties under oath, rather than rest on a dubious, after-the-fact determination whether twelve jurors' individual intellectual machinations remained unaffected by an eight-hour retreat to their homes and families. It is not a matter which lends itself to objective assessment; *in the circumstances present here*, we are not convinced the opinions of the twelve jurors regarding the question of influence should be regarded as necessarily dispositive of the matter. *Cf., State v. Bowman*, (1981) Ind., 423 N.E.2d 605, 609, n. 1 (potential "influence" of unauthorized persons' presence during grand jury proceedings).

■ For these reasons, we decline to invoke the harmless error rationale of *Walker* to the circumstances present here. As we noted in *Walker*, it was doubtful whether the impartiality of the jury's verdict could ever be assured after a five-day and complete separation of jurors in the midst of their deliberations, so also we view the circumstances before us. To the extent *Walker* can be read to warrant application of the harmless error rationale to significant and exigentless separations of the nature which

occurred here and in that case, we modify our decision in *Walker*.

That is not to say that the particular circumstances of any separation may not warrant the application of the *Walker* harmless error rationale. Indeed, we reaffirm the application of the harmless error analysis as employed in *Gibson v. State*, (1971) 257 Ind. 23, 271 N.E.2d 706 (new trial not warranted when, during jury deliberations, one juror separated himself from others), *Bryant v. State*, (1964) 246 Ind. 17, 202 N.E.2d 161 (new trial not warranted when juror-farmer permitted to separate and telephone home to convey instructions concerning care of livestock), and *Jones v. State*, (1899) 152 Ind. 318, 53 N.E. 222 (new trial not warranted when circumstances rendered unavoidable a brief separation of a juror, who had never left the sight of the bailiff). We again reiterate that absent exigent circumstances, trial courts should strictly comply with the requirement that jurors remain together from the moment their deliberations begin until their verdict has been pronounced. *Bales v. State, supra; Walker v. State, supra.*

For all the foregoing reasons, the trial court erred, defendant's conviction and sentence must be reversed, and the cause must be remanded for a new trial.

Judgment reversed; new trial granted.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.