Walter L. WHITE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 92A03–9402–CR–68.

Court of Appeals of Indiana,
Third District.

Nov. 30, 1994.

Susan K. Carpenter, Public Defender, J. Michael Sauer, Deputy Public Defender, Office of Public Defender, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Jodi Kathryn Rowe, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

## OPINION

HOFFMAN, Judge.

Appellant-defendant Walter L. White appeals from his conviction for child molesting, a Class D felony.

On January 31, 1991, an information was filed charging White with criminal deviate conduct and two counts of child molestation. The information was subsequently amended and White was charged with Count I performing an act of deviate sexual conduct with John Doe I, Count II the molestation of John Doe II, and Count III the molestation of John Doe I. White was tried by jury.

The presentation of evidence was concluded on March 11, 1993, and the jury began deliberations. At approximately midnight, the trial court called the jurors into open court. The foreman of the jury informed the court that it had not reached all of its verdicts and that he did not think that it was reasonably possible for the jury to reach verdicts as to all three counts that evening. The foreman further stated that he believed there was a chance of returning verdicts as to all the counts if the jury was allowed to continue its deliberation the following day. The court held the verdicts forms and admonished the jurors not to discuss the case or form any final opinions until further deliberation. Over White's objection, the jurors were allowed to separate for the evening.

The following morning, March 12, 1993, at approximately 9:00 A.M. the jury reconvened. The court then questioned the jurors collectively as to any discussions they may have had about the case, whether any person had influenced them, and whether they heard any news or other information regarding the case. The jurors responded that they had not and they were then allowed to continue their deliberations. Thereafter, the jury returned a guilty verdict as to Count III, child molesting as a Class D felony. The verdict

form on Count III was signed and dated by the jury foreman on March 11, 1993. The jury, however, was unable to reach a verdict as to Counts I and II and a mistrial was declared as to these counts. White was sentenced to a three-year term of imprisonment. He now appeals.

■ One issue is dispositive of our review: whether the trial court erred in allowing the jury to separate during deliberations. Absent exigent circumstances, the jury in a criminal case is to remain together once its deliberations begin and until a verdict is returned.

> *Farrell v. State* (1993), Ind., 622 N.E.2d 488, 493, n. 3;
>
> *Follrad v. State* (1981), Ind., 428 N.E.2d 1201, 1202;
>
> IND. CODE § 35–37–2–6 (formerly IND. CODE § 35–1–37–4).

Although the separation of jurors during the midst of deliberations is not error *per se,* separation for the sake of convenience is unacceptable. *Follrad,* 428 N.E.2d at 1202.

In *Walker v. State* (1980), 274 Ind. 224, 410 N.E.2d 1190, our supreme court set forth a two-step test by which separation of a jury could be held harmless. Thus, if the State proves beyond a reasonable doubt that the separation of jurors during deliberations did not influence them adversely or render them less capable of discharging their duty, and that the verdict " 'clearly appears to be right upon the evidence,' " the error will be deemed to be harmless. *Id.* at 228, 410 N.E.2d at 1193 (quoting, *Riley v. State* (1884) 95 Ind. 446, 450). A year later in *Follrad,* the supreme court expressly modified *Walker* to the extent that the case could be read to warrant application of the harmless error rationale to significant separations in the absence of exigent circumstances. *Follrad,* 428 N.E.2d at 1203.

In *Follrad,* the jury retired to deliberate at approximately 5:15 P.M. Roughly seven hours later, at approximately 1:30 A.M., the jury informed the court that it was unable to reach a verdict. Ten of the jury members polled indicated that it would be futile to continue their deliberations at that hour. Over the defendant's objection, the court al-lowed the jurors to return to their homes with instructions to return the following morning at 9:00 A.M. to continue their deliberations. Prior to departing, the court admonished the jurors to go directly home, to stop nowhere, to talk to no one about the case, and not to allow anyone to address them. *Id.* at 1201. Subsequent to the jury's verdict, the court asked each juror whether the juror had gone directly home, whether the juror had returned directly to the court, whether the juror had discussed the case with anyone during the separation, whether anyone had attempted to raise the subject of the trial, whether the juror heard anything about the case, and whether anything had happened during the separation which had influenced the jury's verdict. The jurors indicated that their travels to and from the courthouse had been direct and that nothing had influenced their verdicts. *Id.* at 1202.

The court noted the absence of exigent circumstances and reiterated that the main thrust of the *Walker* decision was that " 'barring exigent circumstances, the trial court should not permit the jury to separate once their deliberations have begun.' " *Follrad,* 428 N.E.2d at 1202, *quoting Bales v. State* (1981), 275 Ind. 515, 418 N.E.2d 215. In refusing to conduct a harmless error analysis, the court in *Follrad* reasoned:

> "[A] separation of jurors is fraught with opportunity for a juror's assessment of the evidence to be influenced. Regardless how stern and rigorous the pre-separation admonishments might be, an inadvertent exposure to extraneous matters, whether via media dissemination of new, public discourse and conjecture, or more subtle influences, is an inevitable prospect. Compliance with the requirement that jurors remain together for the duration of their deliberation serves to insure that, in fact, the verdict is a product of deliberations free of any influence extraneous to the law and evidence presented at trial. The integrity of a jury's deliberations, a matter critical to continued public confidence in our criminal justice system, should remain entrusted to a trained bailiff, sworn to exercise his duties under oath, rather than rest on a dubious, after-the-fact determina-

tion whether the twelve jurors' individual intellectual machinations remained unaffected by an eight-hour retreat to their homes and families. It is not a matter which lends itself to objective assessment; in the circumstances present here, we are not convinced the opinions of the twelve jurors regarding the question of influence should be regarded as necessarily dispositive of the matter."

*Id.* at 1203.

Here, as in *Follrad,* the separation was significant with no exigent circumstances existing to justify the separation of the jury. Further, any contention that the jury returned its verdict as to Count III on March 11, 1993, prior to its separation, is unavailing. Even if the verdict form was signed prior to the separation, the verdict was subject to change at any time before it was accepted by the court and the jury was discharged.

> *See West v. State* (1950), 228 Ind. 431, 437–438, 92 N.E.2d 852, 855 (time when members of jury cease to act as jurors in a case is after jury returns a verdict in open court, it is accepted by the judge and the jury is then officially discharged); *Gilmore v. State* (1951), 229 Ind. 359, 363–365, 98 N.E.2d 677, 679–680 (after the clerk read the verdict of not guilty, but before the verdict was received and the jury discharge, jury was allowed to return to the jury room to correct its verdict).

For the foregoing reasons, the trial court erred; White's conviction and sentence must be reversed and the case remanded for a new trial.

Reversed and remanded.

STATON, J., concurs.

SULLIVAN, J., concurs in result and dissents in part with opinion.

SULLIVAN, Judge, concurring in result and dissenting in part.

I agree with the majority in its conclusion that there were no exigent circumstances justifying the separation of the jury after it had begun deliberations. However, I respectfully dissent from the conclusion that

because the final verdict remained subject to change until it had been accepted by the trial court, reversal is required.

In the case before us the verdict, as finally returned and accepted by the trial court, is identical to the verdict as announced by the jury to the trial court prior to its separation. In my view, such clearly demonstrates that the dangers inherent in separation were manifested in the final verdict. Quite simply, the verdict has been demonstrated to be "free of any influence extraneous to the law and evidence presented at trial." *Follrad v. State* (1981) Ind., 428 N.E.2d 1201, 1203.

Notwithstanding my disagreement with the rationale employed by the majority for the result reached, I agree that reversal is required. My concurrence is premised upon two errors, both of which call for a new trial.

During trial the State made numerous comments with respect to White's silence after he had received *Miranda* warnings. The comments were neither inadvertent nor isolated. One such question and its greatly prejudicial answer was as follows:

> "PROSECUTOR: Alright, uh, when you first started talking with Mister White would you describe for the jury his demeanor and his, either, cooperativeness or lack of cooperativeness?
>
> DET. YORK: When Mister White was confronted with the allegations that had been made against him, uh, he was seated in a chair. Mister White crossed his legs, crossed his arms across his chest in this manner and placed his head down. He gave no verbal response to any of the questions that were asked. He did not shake his head yes or no when he was asked questions or talked to. He remained in this position for several minutes." Record at 330–31.

Even more damaging, however was a question posed by the State to the defendant upon cross-examination and followed by a piercingly accusatory comment by the prosecutor:

> "PROSECUTOR: Okay. Is it fair if I say that you vehemently denied [on direct examination] the accusations that are con-

tained in the charging affidavits that you molested these boys?

MR. WHITE: That's correct, I do.

PROSECUTOR: But when officers Yorg and Fisher first asked you about the accusations and asked you to respond, is it not true that you, as Mister Yorg testified, reacted by dropping your head and folding your arms and looking at the floor?" Record at 765–66.

Thus, in its brief upon appeal, the State is reprehensibly in error when it states that the matter of defendant's post-Miranda silence was "elicited ... not from the defendant." Appellee's Brief at 15. In actuality, and as noted by the State, *Bevis v. State* (1993) 1st Dist.Ind.App., 614 N.E.2d 599, stated that where, as here, "the State asks the defendant about his silence, the probable impact upon the jury tends to be more harmful than harmless." 614 N.E.2d at 604. It cannot be said with any degree of assurance that the jury was unaffected by the evidentiary harpoon thrust at White. The comments, of and in themselves, call for reversal.

Additionally, the State's use in evidence of prior unrelated bad acts upon the part of White dictate reversal. The rule of *Lannan v. State* (1992) Ind., 600 N.E.2d 1334, was clearly applicable at the time of White's trial. *Lannan* was decided October 16, 1992. White's trial took place March 9, 10, and 11, 1993.

In the case before us the State introduced into evidence numerous and varied instances of White's prior unrelated conduct which tended to show that he was generally a bad person who contributed to the delinquency of minors. More prejudicial, however, was the evidence of a depraved sexual instinct. The evidence which came before the jury in these respects was not inadvertent or isolated. The evidence was not otherwise arguably non-prejudicial. *See Rafferty v. State* (1993) 1st Dist.Ind.App., 610 N.E.2d 880. The prejudice to White is self-evident.

For the reasons set forth herein, I concur in reversal of the judgment.