Kevin TAYLOR, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 20A04–0909–PC–511.

Court of Appeals of Indiana.

March 11, 2010.

Kenneth R. Martin, Goshen, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Kevin Taylor appeals the post-conviction court's denial of his petition for post-conviction relief. Taylor raises two issues for our review, one of which is dispositive: whether the post-conviction court erred when it found that Taylor had not received ineffective assistance of trial counsel.[1]

We reverse and remand for a new trial.

### FACTS AND PROCEDURAL HISTORY

This court recently reviewed the facts and procedural history of Taylor's case:

On the evening of May 19, 2003, Taylor, [co-defendant Kelly Scott] Thomas, and Stacy Lynn Orue went to Gwen Hunt's apartment in Elkhart, Indiana, to obtain crack cocaine. Orue had previously used drugs in Hunt's residence and knew that she kept drugs and money in her home. At some point, the trio decided to rob Hunt. When they arrived at her apartment, Thomas forced his way through the door and hit Hunt in the head with a pipe. Either Thomas or Taylor then shot Hunt in the back of her head at close range, an injury from which Hunt died the next day. The

---

1. Taylor also avers that he received ineffective assistance of appellate counsel during his direct appeal. Because we hold that Taylor has demonstrated that he received ineffective assistance of his trial counsel, we need not reach his ineffective assistance of appellate counsel claim.

group stole jewelry, crack cocaine, and money.

Taylor, Thomas, and Orue were all charged with felony murder and tried together during a five-day jury trial spanning January 31 through February 4, 2005. The jury found all three defendants guilty of felony murder. After a sentencing hearing on March 3, 2005, the trial court sentenced Taylor to sixty-five years. On direct appeal, Taylor's counsel raised one issue: whether the trial court erred in denying his motion for a mistrial based upon alleged prosecutorial misconduct. In a unanimous unpublished memorandum decision, we affirmed Taylor's conviction. *Taylor v. State*, No. 20A03–0507–CR–319, 835 N.E.2d 233 (Ind.Ct.App. Sept.29, 2005) ["*Taylor I*"].

However, when co-defendant Thomas appealed his conviction on direct appeal, he raised the issue of whether his conviction should be reversed because the jury was not instructed on the elements of robbery. Concluding that the trial court committed fundamental error by not instructing the jury on the elements of robbery—the underlying felony for Thomas's felony murder conviction—we reversed and remanded for a new trial. *Thomas v. State*, No. 20A03–0503–CR–138, slip op. at 5, 844 N.E.2d 229 (Ind. Ct.App. Feb.3, 2006).

After we issued our opinion on Taylor's direct appeal, he filed a pro se Verified Petition for Post–Conviction Relief. In his petition, Taylor argued that he received ineffective assistance of trial counsel because of counsel's failure to object to the trial court's final instructions[,] which failed to instruct the jury as to the elements of robbery. A hearing was held on Taylor's petition for post-conviction relief on December 22, 2006. At the hearing, Taylor's counsel did not present any testimonial or docu-

mentary evidence in support of Taylor's claim but argued solely that the Thomas decision was binding upon the post-conviction court and dispositive of the issue. Defense counsel later requested leave to file a brief in support of the petition, which the post-conviction court granted. In his brief, submitted March 1, 2007, Taylor argued that he also received ineffective assistance of appellate counsel for appellate counsel's failure to raise this issue on direct appeal. With the brief, he submitted a copy of the Thomas decision, the chronological case summary from Taylor's underlying criminal case, and our decision on Taylor's direct appeal, and posited that the "*Thomas* case is controlling; that is the law of the case, and therefore applicable and binding on this Court pursuant to Appellate Rule 65(D). Furthermore, this Court must take judicial notice of the Court of Appeals' decision in the *Thomas* case pursuant to Indiana Rules of Evidence, Rule 201(b) and (d)." He contended, "Since the Court of Appeals found there was fundamental error in Thomas' case, then this court must likewise find that there was fundamental error in Kevin Taylor's trial because Taylor and [Thomas] were tried together and Thomas' case is the rule of the case." The post-conviction court denied Taylor's petition. . . .

On appeal, Taylor raises four issues, which we rephrase as: (1) whether the trial court committed fundamental error in failing to instruct the jury regarding the elements of robbery, (2) whether the post-conviction court erred in finding that he did not receive ineffective assistance of trial counsel, (3) whether the post-conviction court erred in finding that he did not receive ineffective assistance of appellate counsel, and (4)

whether he was deprived of a procedurally fair post-conviction hearing.

* * *

We begin by noting that Taylor raises a freestanding claim of fundamental error.... Despite Taylor's argument that we should entertain his freestanding claim ..., the law is clear that we may not do so [in the post-conviction process]. His freestanding claim of jury instruction error is waived.

* * *

Taylor argues that he received ineffective assistance of trial counsel because his attorney did not object to the trial court's failure to instruct the jury regarding the elements of robbery....

* * *

... At the post-conviction hearing, Taylor's counsel contended that the *Thomas* decision proved that the trial court committed fundamental error in instructing the jury during the co-defendants' joint trial.

We disagree. The record evidences only that the trial court failed to instruct the jury on the elements of robbery in regard to Thomas. We are presented with no verification that the jury did not, in fact, receive a robbery instruction as to Taylor. *Undoubtedly, if the trial transcript were presented and reflected that no robbery instruction was given pertaining to Taylor, this would prove error.* However, this is simply something that we cannot presume.

* * *

Taylor next argues that he received ineffective assistance of appellate counsel because of his appellate attorney's failure to raise the issue of whether the trial court's failure to instruct the jury

on the elements of robbery constituted fundamental error....

Here, Taylor failed to prove that he received ineffective assistance of trial counsel. Likewise, he has failed to show ineffective assistance of appellate counsel for failing to raise the claim on appeal....

Finally, Taylor argues that he was deprived of a procedurally fair post-conviction hearing....

* * *

In a case almost identical to the one before us today ..., this Court determined that post-conviction counsel's performance denied the petitioner a fair hearing. As in [*Waters v. State,* 574 N.E.2d 911, 912 (Ind.1991)], wherein counsel presented no evidence in support of his client's claim, in [*Bahm v. State,* 789 N.E.2d 50, 61–62 (Ind.Ct. App.2003), *clarified on reh'g on other grounds,* 794 N.E.2d 444 (Ind.Ct.App. 2003), *trans. denied,*] ... counsel appeared at the post-conviction hearing and presented no evidence in support of his client's claim. "While Bahm's counsel appeared at the post-conviction hearing and made legal arguments," we observed that "[c]ounsel presented no evidence at the post-conviction hearing to support Bahm's petition—he did not call any witnesses, submit any affidavits, or even submit the direct appeal record." Noting that counsel should have known the necessity of presenting the trial record to the post-conviction court, we found that "[c]ounsel's failure to present any evidence deprived Bahm of a fair hearing."

In this case, counsel appeared at the post-conviction hearing and argued only that the appellate decision in Taylor's co-defendant's case warranted relief for Taylor. However, precisely as in *Bahm,*

counsel called no witnesses, presented no affidavits, and did not submit the trial record. Such sparse information rendered it impossible for the post-conviction court to conduct the necessary *Strickland* analysis. We find that counsel effectively abandoned Taylor at the post-conviction hearing by failing to present evidence in support of his claim. *See Waters*, 574 N.E.2d at 912. Therefore, we conclude that Taylor was deprived of a procedurally fair hearing and that he is entitled to a new post-conviction hearing. *Id. Because the deprivation of a procedurally fair hearing undermined the process by which the post-conviction court evaluated Taylor's ineffective assistance of counsel claims, he is entitled to raise these claims again during his new hearing and to receive a ruling on their merits.*

\* \* \*

... Therefore, we reverse and remand for a new post-conviction hearing.

*Taylor v. State*, 882 N.E.2d 777, 779–84 (Ind.Ct.App.2008) (emphases added; footnotes and some citations omitted; some alterations original) ("*Taylor II*").

On March 19, 2009, the post-conviction court held an evidentiary hearing on remand. At that hearing, Taylor's post-conviction counsel submitted the trial transcript and record, which reflected both that the trial court did not instruct the jury on the elements of robbery as pertaining to Taylor and that Taylor's trial counsel did not object to that error. *See* Transcript at 1481–97; *Taylor I* App. at 124–47.[2] Nonetheless, on July 13, the post-conviction court entered findings of fact and conclusions of law denying Taylor's

petition for relief. In particular, the court stated as follows:

17. ... In this case, Taylor claims he is entitled to a new trial based upon ineffective assistance of trial counsel as the jury was not instructed on the elements of robbery....

18. ... At the second hearing in these proceedings, Taylor's trial counsel, Neil Holbook ("Holbrook"), testified that he focused on the murder and Taylor's defense that he did not do it as opposed to the underlying robbery. Holbrook is an experienced attorney who has handled numerous criminal cases over several years. Holbrook stated that he assessed the case, discussed the instructions with all counsel, and determined that the best defense was not that the robbery did not occur, but that it was not his client who was involved in the entire incident. This demonstrates that Holbrook strategized and decided to focus on the strongest theory of defense rather than compromise credibility by splitting defense theories.

19. Furthermore, even though the jury was not formally instructed on the elements of robbery, the elements of robbery were identified, discussed, hypothesized and argued to the jury on multiple occasions as evidenced by the official record and the testimony during the evidentiary hearing. Not only were the elements of robbery discussed during voir dire, all elements of robbery were identified and the facts as applicable to robbery were argued and shown to be satisfied by the evidence in closing argument. Moreover, Taylor's appellate counsel [in *Taylor I*], Michael Greene ("Greene"), testified that he did not believe that challenging the fact that a

---

**2.** Taylor resubmitted the appendix from his direct appeal in the instant appeal. For clarity, we refer to the appendix for the instant

appeal as the "Appellant's Appendix" and the appendix from his direct appeal as the "*Taylor I* Appendix."

robbery occurred appeared to be a legitimate claim in this case. Greene stated that he did not raise robbery as an issue on direct appeal because he noted from a review of the transcript that robbery was discussed at trial. Both Holbrook's and Greene's decisions about what arguments, evidence and issues to present in this case were conscious and professional choices and do not rise to the level of either fundamental error or deficient performance.

20. ... Given the evidence at trial, and the totality of the information provided to the jury regarding robbery, it cannot be said that Taylor was deprived of a fair trial or that the outcome would have been different had counsel insured that the jury was formally instructed on the elements of robbery. Accordingly, Petitioner's claims of ineffective assistance of trial counsel and appellate counsel fail.

Appellant's App. at 62–64. This appeal ensued.

## DISCUSSION AND DECISION

■■ Taylor appeals from the post-conviction court's denial of his petition for post-conviction relief. We described our standard of review in *Taylor II:*

Taylor appeals the denial of post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5). When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment, *Fisher v. State,* 810 N.E.2d 674, 679 (Ind.2004), and we will not reverse the judgment unless the evidence unerringly and unmistakably leads to the opposite conclusion, *Patton v. State,* 810 N.E.2d 690, 697 (Ind.2004). We also note that the post-conviction court in

this case entered findings of fact and conclusions of law in accordance with Indiana Post–Conviction Rule 1(6). We will reverse a post-conviction court's findings and judgment only upon a showing of clear error, which is that which leaves us with a definite and firm conviction that a mistake has been made. *Hall v. State,* 849 N.E.2d 466, 468 (Ind.2006). Such deference is not given to conclusions of law, which we review de novo. *Chism v. State,* 807 N.E.2d 798, 801 (Ind.Ct.App.2004).

882 N.E.2d at 780–81.

■■ As an initial matter, the State suggests that Taylor's claims in this appeal are precluded by our prior decision in *Taylor II.* The State is incorrect. In *Taylor II,* we held that Taylor's post-conviction counsel had not adequately developed the post-conviction record on Taylor's allegations that he had received ineffective trial and appellate counsel. *Id.* at 783–84. Because of the improperly developed record, we were unable to reach the merits of Taylor's allegations. *Id.* at 781–82. We then expressly remanded with instructions for Taylor's post-conviction counsel to submit the trial record to the post-conviction court for a determination on the merits of Taylor's allegations of ineffective trial and appellate counsel. *Id.* at 783–84. As such, his presentation of those issues on remand are most certainly not barred by res judicata or the law of the case doctrine, and the State's suggestions to the contrary are meritless.

■■ The State also interprets Taylor's arguments in this appeal as allegations of fundamental error. A free-standing claim of fundamental error is not available in post-conviction proceedings. *Lindsey v. State,* 888 N.E.2d 319, 324 (Ind.Ct.App. 2008) (discussing *Bailey v. State,* 472 N.E.2d 1260 (Ind.1985)), *trans. denied.*

But "[a] defendant in a post-conviction proceeding may allege a claim of fundamental error ... when asserting ... deprivation of the Sixth Amendment right to effective assistance of counsel." *Id.* (quotation and alteration omitted). Taylor is plainly asserting deprivation of his right to counsel. As such, we consider the merits of his allegations.

Taylor contends that the post-conviction court erred when it concluded that he had not received ineffective assistance of trial counsel. A claim of ineffective assistance of counsel must satisfy two components. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687–88, 104 S.Ct. 2052. Second, the defendant must show prejudice: a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694, 104 S.Ct. 2052.

In particular, Taylor asserts that his trial counsel rendered ineffective assistance when he failed to object to the trial court's jury instructions on the grounds that those instructions did not include the elements of robbery, which was the felony underlying the State's charge of felony murder. "To succeed on a claim that counsel was ineffective for failure to make an objection, the defendant must demonstrate that if such objection had been made, the trial court would have had no choice but to sustain it." *Little v. State,* 819 N.E.2d 496, 506 (Ind.Ct.App.2004), *trans. denied.* Here, to be convicted of felony murder, "it was necessary to instruct the jury on the definition of rob-

bery, in that it was necessary for the jury to find that a robbery in fact had been perpetrated before it could come to the conclusion that a felony murder had been committed." *Brownlow v. State,* 484 N.E.2d 560, 562 (Ind.1985). "[I]t is bedrock law that a defendant in a criminal case is entitled to have the jury instructed on all the elements of the charged offense." *Thomas v. State,* 827 N.E.2d 1131, 1134 (Ind.2005).

In *Thomas* (a case unrelated to Taylor's co-defendant, Kelly Scott Thomas), our supreme court reviewed whether a defendant's trial counsel had rendered ineffective assistance when he failed to request a jury instruction on the felony underlying a charge of felony murder, even though the jury received an instruction on knowing or intentional murder. The court held that the defendant did not receive ineffective assistance of counsel:

Under Indiana law, a person can be guilty of the crime of Murder in several ways. One such way is by knowingly or intentionally killing another human being. A second is by killing another human being while committing or attempting to commit certain felonies such as arson, burglary, or dealing in cocaine. The first of these two ways is often referred to as the crime of "Knowing or Intentional Murder," and is established by Indiana Code § 35–42–1–1(1); the second as "Felony Murder," established by Indiana Code § 35–42–1–1(3). The difference between what the State must prove to obtain a conviction for each of these two types of murder is that, for Knowing or Intentional Murder, the State must prove that the killing was committed "knowingly or intentionally"; for Felony Murder, the State need not prove that the defendant acted with any particular mental state—the killing could be totally accidental—so long as

the State does prove that the killing occurred while the defendant was committing (or attempting to commit) a specified felony.

* * *

... [T]he charging information in this case alleged that Thomas was guilty of Felony Murder because he had "knowingly or intentionally kill[ed] another human being, namely Sheldon Byrd while dealing in cocaine or a narcotic drug (Ind.Code 35–48–4–1)...."

The imprecision in the charging instrument should be apparent. While it alleges that Thomas was guilty of Felony Murder, it sets forth all of the elements necessary to convict a person of Knowing or Intentional Murder, in addition to including a felony that would support a conviction for Felony Murder [i.e., dealing in cocaine]. Put differently, while proving either the elements of Felony Murder alone or the elements of Knowing or Intentional Murder alone would be enough to convict him of the crime of Murder, by charging Thomas in this way, the State suggested that it would attempt to prove him guilty both of Felony Murder and also of Knowing or Intentional Murder.

* * *

While it is bedrock law that a defendant in a criminal case is entitled to have the jury instructed on all of the elements of the charged offense, *In re Winship,* 397 U.S. 358, 373–74, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), we perceive no harm to Thomas from the fact that his jury was not instructed on all of the elements of the offense of dealing in cocaine. This is because the jury was instructed on all of the elements of the offense of Knowing or Intentional Murder, with respect to which *the reference to dealing in cocaine was mere surplusage. When the jury found him guilty of Knowing or Intentional Murder, that is to say, that the State had met its burden of proof on each and every element of the offense of Knowing or Intentional Murder, it simply did not matter how completely the jury was instructed on the offense of dealing in cocaine.*

An individual's Sixth Amendment right to the effective assistance of counsel is not violated unless there is prejudice from counsel's deficient performance. *Strickland v. Washington,* 466 U.S. 668, 691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Given that the omission of the elements of dealing in cocaine from the jury instruction was totally harmless, trial counsel's failure to seek an instruction on the elements of dealing in cocaine and appellate counsel's failure to claim that the trial judge's failure to give such an instruction constituted fundamental error did not constitute ineffective assistance of counsel. *See Neder v. United States,* 527 U.S. 1, 10, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (holding that the omission of an element is subject to harmless-error analysis).

It is important to note that part of the reason why there is no harm here from the failure to instruct on the specific elements of dealing in cocaine is that, even though the charging instrument may have referred to the offense as Felony Murder, Thomas was in fact charged with all of the elements of Knowing and Intentional Murder and each of those elements was contained in the jury charge as well. *It would have been a different case entirely if Thomas had been charged with only the elements of Felony Murder; in that circumstance, it would have been necessary to provide the jury with the specific elements of the underlying felony.*

*Id.* at 1132–35 (emphases added; some citations omitted and some omissions original). The alternative scenario suggested by our supreme court at the end of its discussion of ineffective assistance of counsel in *Thomas* is precisely what happened during Taylor's trial.

In support of his petition for post-conviction relief on remand, Taylor submitted his trial transcript and trial record. A review of the trial transcript and the entirety of the jury instructions demonstrates that the trial court did not instruct the jury on any of the elements of robbery with respect to the State's charges against Taylor. *Taylor I* App. at 124–47; *see Ringham v. State,* 768 N.E.2d 893, 898 (Ind.2002) ("we look to the jury instructions as a whole to determine if they were adequate."). Neither do the jury instructions lend themselves to an interpretation that would render an instruction on the elements of robbery "mere surplusage." *Thomas,* 827 N.E.2d at 1134.

Accordingly, had Taylor's counsel objected to the instructions for their failure to include the elements of robbery, the trial court would have had no choice but to sustain that objection. As our supreme court has stated:

> the giving of an instruction detailing the elements of offense ... is necessary procedure in a criminal trial. [W]e have no doubt *a total failure to give an instruction* detailing the elements of the offense would be available as reversible error on appeal absent compliance with the contemporaneous objection requirement.

*Lacy v. State,* 438 N.E.2d 968, 971 (Ind. 1982) (emphasis added) (discussing *Screws v. United States,* 325 U.S. 91, 107, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945)). Accordingly, Taylor has demonstrated deficient performance by his trial counsel.

In its order following remand, the post-conviction court concluded that Taylor's trial counsel strategically chose to not challenge the State's allegation of robbery, as that allegation pertained to the felony murder charge. But the court's conclusion explains only why Taylor's trial counsel presented the case that he did; it does not explain why Taylor's trial counsel did not object to the jury instructions. As Taylor's trial counsel himself acknowledged in his testimony to the post-conviction court, the failure to object to the jury instructions was not "a matter of trial tactics [but] an oversight." Post–Conviction Transcript at 23. Thus, we must conclude that Taylor has met his burden of demonstrating that the post-conviction court erred when it concluded that Taylor's trial counsel had not performed deficiently.

Taylor also has demonstrated prejudice as a result of his trial counsel's deficient performance. To establish prejudice, Taylor must show a reasonable probability that, but for his trial counsel's error, the result of the proceeding would have been different. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. In other words, if trial counsel's error was "totally harmless," there cannot have been ineffective assistance of trial counsel. *See Thomas,* 827 N.E.2d at 1134.

It was Taylor's right to have the jury instructed on the elements of the felony underlying the felony murder allegation. *See id.* at 1135; *Lacy,* 438 N.E.2d at 970–71. But, again, the jury rendered a verdict on the State's charge of felony murder without having known or considered the elements of the underlying felony. As Taylor's counsel in this appeal accurately notes, his trial counsel's failure "left [the jurors] to fend for themselves and cobble together whatever robbery elements they could." Appellant's Brief at 12. As a result, Taylor was denied fundamental due

process. *See Lacy,* 438 N.E.2d at 971; *see also Thomas,* 827 N.E.2d at 1135 (noting that it is "necessary to provide the jury with the specific elements of the underlying felony").

■ Nonetheless, the post-conviction court concluded that any deficient performance by Taylor's trial counsel was harmless. In the words of the post-conviction court, "[g]iven the evidence at trial, and the totality of the information provided to the jury regarding robbery, it cannot be said that . . . the outcome would have been different had counsel insured that the jury was formally instructed on the elements of robbery." Appellant's App. at 64. The State adopts that analysis in its appellee's brief.

The harmless-error analysis proffered by the post-conviction court, the State, and the dissent presumes too much. It is the province of the jury to decide Taylor's guilt, but, having never been instructed on any of the elements of robbery, it is impossible to say whether the jury would have found Taylor guilty of robbery. A jury cannot be asked to find guilt without an instruction on the elements of the crime. This is not a review of the sufficiency of the evidence following a jury's verdict on a proper instruction of robbery, it is not a review of a verdict based on a comparable jury instruction, and it is not a review of a verdict that was based on an instruction that neglected only a single element of the charged offense. *See Neder,* 527 U.S. at 10, 119 S.Ct. 1827 (holding that the omission of a single element is subject to a harmless-error analysis); *Thomas,* 827 N.E.2d at 1134–35 (holding that a comparable jury finding that renders omitted elements mere surplusage is harmless error).

■ Harmless-error analysis has no place where, as here, an essential instruction on the underlying offense is missing entirely. As we have recognized:

> A federal constitutional error is reviewed de novo and must be "harmless beyond a reasonable doubt." *Alford v. State,* 699 N.E.2d 247, 251 (Ind.1998) (quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). The court must find that the error did not contribute to the verdict, that is, that the error was unimportant in relation to everything else the jury considered on the issue in question. *Davies* [*v. State*], 730 N.E.2d 726, 735 (Ind.Ct.App.2000), *trans. denied, cert. denied,* [532 U.S. 945, 121 S.Ct. 1410, 149 L.Ed.2d 352 (2001) ].

*Morales v. State,* 749 N.E.2d 1260, 1267 (Ind.Ct.App.2001). Where the jury has received no instruction whatsoever on the underlying felony, it is impossible to say that that error "did not contribute to the verdict." We simply cannot genuinely assess what might or might not have been important to the jury's consideration of the underlying felony when the jury was never asked to consider that felony. To the contrary, the error here is intertwined with the verdict. *See, e.g., Follrad v. State,* 428 N.E.2d 1201, 1202–03 (Ind.1981) (holding that the harmless-error analysis does not apply, and reversal is required, when jurors are separated for significant lengths of time without exigent circumstances).

The analysis proffered by the post-conviction court and relied upon by the State and the dissent requires a reviewing court to prejudge what a jury might have determined if it had been properly instructed. In so doing, that analysis denies a defendant his right to a jury trial and it denies the jury its right to determine the law and the facts of a case. Ind. Const. art. I, §§ 13(a), 19. Accordingly, Taylor has met his burden of demonstrating prejudice, and the post-conviction court erred when it

denied his petition for post-conviction relief.

Reversed and remanded for a new trial.

FRIEDLANDER, J., concurs.

BRADFORD, J., dissents with separate opinion.

BRADFORD, Judge, dissenting.

I respectfully disagree that Taylor received ineffective assistance of trial counsel in this case, as I do not believe that he has carried his burden to show a reasonable probability that he would have been acquitted had the jury been instructed on the elements of felony murder. In addition, I also do not believe that Taylor received ineffective assistance of appellate counsel, an issue not reached by the majority. In my view, Taylor would not have been entitled to a new trial had his appellate counsel raised the instruction issue on direct appeal and so cannot show prejudice from counsel's failure to do so. Consequently, I dissent.

I think we can all agree that the jury should have been instructed on the elements of robbery, as the underlying felony of the felony murder charge against Taylor. The failure to insist on this by Taylor's trial counsel may well constitute deficient performance. In the context of a claim of ineffective assistance, however, Taylor must also show prejudice. The question is not whether error occurred, but whether there exists a *reasonable probability that he would have been acquitted* had it not occurred. I think Taylor has fallen far short of carrying his burden on this point.

It is as well-settled that "[e]rrors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." *Dill v. State,* 741 N.E.2d 1230, 1233 (2001) (citing

*Crawford v. State,* 550 N.E.2d 759, 762 (Ind.1990); *Stout v. State,* 479 N.E.2d 563, 565 (Ind.1985); *Battle v. State,* 275 Ind. 70, 77, 415 N.E.2d 39, 43 (Ind.1981); *Grey v. State,* 273 Ind. 439, 448, 404 N.E.2d 1348, 1353 (Ind.1980); *Pinkerton v. State,* 258 Ind. 610, 622, 283 N.E.2d 376, 383 (Ind. 1972)). It is clear to me that such is the case here.

Sherry Flynn testified that Orue and Taylor were in a crack house on the afternoon of May 19, 2003, and told her that they intended to go to Hunt's apartment to obtain some crack cocaine on credit. (Tr. 870–47, 877–79). Wanda Newbry testified that Orue told her that she had gone to Hunt's apartment to rob her; that Orue knew that Hunt would open the door for her; that "[t]hey" took $5000 in cash, jewelry, and drugs; and that Hunt "got shot in the head in the foyer." Trial Tr. p. 1106. Michael Ginyard testified that at some point after June of 2003, Thomas told him that he had forced his way into Hunt's apartment, hit her with a pipe, and made off with drugs and money. (Tr. 1004–05). William Philbrook testified that Taylor told him that he had put a "cap [in] that bitch Gwen." Tr. p. 949. Carolyn Keeney testified that she saw Taylor, Thomas, and Orue leaving Hunt's apartment, saw that Thomas was carrying a gun, saw that Taylor dropped a two-to-three-inch roll of cash on the ground, and that her view was unimpeded. (Tr. 733–42). Flynn testified that she saw Thomas in possession of a gun shortly after Hunt's killing. (Tr. 887). Angela Salazar, Thomas's girlfriend at the time, testified that on the night of Hunt's death, Thomas had a gun and told her that Hunt's death was the result of a "robbery gone bad[.]" Trial Tr. p. 920. Keeney further testified that approximately one-and-one-half weeks after Hunt's death, Taylor held a knife to her throat and told her to forget what she had seen that day.

(Appellant's App. 726, 727, 759–60). In light of this overwhelming evidence, it seems unlikely in the extreme that the jury would have acquitted Taylor if only it had been instructed on robbery.

Moreover, it is not as though the jury was completely in the dark on the elements of robbery. During voir dire, the prosecutor instructed all prospective jurors (necessarily including all who made it onto the jury) that robbery consisted of "tak[ing] property from the presence of another person either by force or fear." Trial Tr. p. 78. During the jury selection process, not one prospective juror expressed any difficulty understanding the concept of felony murder as it applied in this case. During closing, the prosecutor reiterated the requirement that property must be taken from another person by the use of force or fear. (Tr. 1405).

Finally, I would also take into account the issues that were actually contested at trial. Significantly, whether a robbery actually occurred was not one of those issues. The only contested trial issue was identity, and, to that end, the strategy employed by all three codefendants was to attack the credibility and motivation of many of the State's witnesses. In light of the jury's guilty verdicts, these attacks obviously did not work. In my view, only something likely to have caused the jury to disbelieve all of the State's key witnesses would satisfy the prejudice requirement here, and it would be absurd to conclude that an instruction on the elements of robbery would have caused the jury to assess the credibility of the State's witnesses any differently than it did. In light of the overwhelming evidence of Taylor's guilt, the fact that the jury was told the elements of robbery at least twice, and that the defense strategy would not have been affected in the least by an instruction on robbery, I conclude that Taylor has fallen far short of establishing a reasonable probability that he would have been acquitted had the jury been so instructed.

Moreover, I do not believe that Taylor has established that he received ineffective assistance of appellate counsel, again on the basis that he cannot establish the required prejudice. Taylor claims that, had his appellate counsel raised the robbery instruction issue on direct appeal, he would have won his direct appeal. Taylor contends that the omission of the robbery instruction amounted to fundamental error.

Fundamental error is error that represents a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process. The error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. In determining whether a claimed error denies the defendant a fair trial, we consider whether the resulting harm or potential for harm is substantial. The element of harm is not shown by the fact that a defendant was ultimately convicted. Rather, it depends upon whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he would have been entitled. In determining whether fundamental error occurred in the giving of instructions, we consider all the relevant information provided to the jury including that in closing arguments and other instructions. There is no due process violation where all such information, considered as a whole, does not mislead the jury as to a correct understanding of the law.

*Davis v. State*, 835 N.E.2d 1102, 1107–08 (Ind.Ct.App.2005), trans. denied. *Taylor* cites *Lacy v. State*, 438 N.E.2d 968 (Ind.

1982), for the proposition that it is fundamental error for a trial court to fail to give an instruction setting forth all of the elements of an offense. *Id.* at 971. First, Lacy does not stand for the proposition that Taylor claims it does. The passage in question reads, "[W]e have no doubt a total failure to give an instruction detailing the elements of the offense would be available as reversible error on appeal absent compliance with the contemporaneous objection requirement[,]" *id.,* which applies only when a trial court fails to instruct on any of the elements of the crime. Lacy simply does not apply in this case, as the trial court did instruct the jury on all of the elements of felony murder other than the elements pertaining to robbery.

Moreover, I agree with the *Davis* court, which noted that this language was dictum and represented an overbroad reading of United States Supreme Court precedent in any event. *Davis,* 835 N.E.2d at 1109. The *Davis* court also noted that Indiana courts had concluded that omissions in jury instructions did not constitute fundamental error:

> In *Elliott* [*v. State,* 450 N.E.2d 1058 (Ind.Ct.App.1983)], the defendant was charged with involuntary manslaughter, but the jury instructions did not include an instruction on proximate cause. 450 N.E.2d. at 1063. The *Elliott* court declined to find that the omission constituted fundamental error because there was no question that the victim died as a result of the battery, and therefore, no prejudice had resulted from the omission. *Id.* at 1064–65. In reaching this conclusion, the *Elliott* court relied upon several federal circuit court cases as well as an early Indiana supreme court case. *Id.; see United States v. Park,* 421 U.S. 658, 673–74, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975) (stating that failure to instruct jury that defendant had the responsibility and authority to prevent or

correct violation and failed to do so was not an abuse of discretion where jury could not have failed to be aware, based on the instructions as a whole and in context of the trial, that defendant's responsibility, and not his position, was at issue); *see also Rokvic v. State,* 194 Ind. 450, 457–58, 143 N.E. 357, 359 (1924) (stating that omission of instruction that vehicle must be taken without owner's consent was not prejudicial to defendant where undisputed evidence established that stolen vehicle had been taken without owner's consent); *see also Stafford v. State,* 736 N.E.2d 326, 332 (Ind.Ct. App.2000) (concluding that trial court's failure to specifically instruct jury that State was required to prove confinement without consent was not fundamental error, where instructions together as a whole adequately informed jury that victim must not consent to confinement), *trans. denied.*

*Id.* In short, I agree with the *Davis* court that "justice can be best served by analyzing questions involving jury instructions based on the circumstances of each case to determine whether the defendant received a fair trial rather than summarily concluding that any omission is fundamental error." *Id.*

I see nothing in the record to suggest that Taylor was denied a fair trial in any way by the omission of an instruction on the elements of robbery. As previously discussed, the evidence overwhelmingly established his guilt, the jury was told of the elements of robbery on two occasions during voir dire and closing, and there was no dispute whatsoever that a robbery took place. Under the circumstances of this case, I would hold that Taylor has not established fundamental error. Consequently, he would not have won his direct appeal on this claim had it been raised, and he was therefore not the recipient of

ineffective assistance of appellate counsel. I would affirm the post-conviction court in all respects.